GUARDIAN TRUST CO. v. STRAUS et al.

(Supreme Court, Appellate Division, First Department.   June 10, 1910.)

1. EXECUTORS AND ADMINISTRATORS (§ 46*)—ASSETS—INSURANCE.

Domestic Relation Laws (Laws 1896, c. 272) § 22, providing that that portion of insurance money which was purchased in excess of premiums above $500 per annum, on the life of a married man, is primarily liable for his debts, applies to policies negotiated or procured by the husband as well as those obtained on the husband's life by the wife, and makes the insurance purchased by the husband with such excess premiums, assets in the hands of the husband's administrator for distribution among all his creditors equally.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 297; Dec. Dig. § 46.*]

2. INSURANCE (§ 590*)—INSOLVENT ESTATES—INSURANCE MONEY—PREMIUM—PAYMENT BY WIFE—EVIDENCE.

In a creditors' suit to recover insurance on the life of a husband, purchased with premiums in excess of $500 per annum, as provided by Domestic Relations Law (Laws 1896, c. 272) § 22, evidence *held* insufficient to show that the wife in fact paid the premiums on the policies in excess of $500 from her separate property.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 590.*]

3. INSURANCE (§ 590*)—INSOLVENT ESTATES—INTEREST OF WIFE—PAYMENT OF PREMIUMS—BURDEN OF PROOF.

Where, in a creditors' suit to recover insurance money on the debtor's life, alleged to have been purchased with premiums in excess of $500 per annum, as authorized by Domestic Relations Law (Laws 1896, c. 272) § 22, the wife defended on the theory that the premiums in excess of $500, had been paid by her out of her separate funds, the burden was on her to establish such fact by convincing affirmative proof, such as by tracing the premiums through the husband's hands, and identifying them in the hands of the insurer as coming from the wife.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 590.*]

4. INSURANCE (§ 17*)—FOREIGN INSURANCE COMPANY—APPLICABILITY TO STATE LAWS.

Foreign insurance companies in a business conducted by them, are in general, subject to the regulatory provisions of domestic statutes of general application.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 12; Dec. Dig. § 17.*]

5. INSURANCE (§ 590*)—INSOLVENT ESTATES—REMEDIES OF CREDITORS—OTHER ACTIONS SUPERSEDED.

Where, after insured died, his widow brought several actions in New York on policies insuring his life, such actions were superseded by creditors' suit for the benefit of all insured's creditors to recover the insurance purchased with premiums in excess of $500 per annum.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 590.*]

6. INSURANCE (§ 590*)—INSOLVENT ESTATES—REMEDIES OF CREDITORS—TIME TO SUE—PREMATURE SUIT.

A creditor's suit to recover insurance on a debtor's life, purchased with premiums in excess of $500 per annum, as authorized by Domestic Re-

lations Law (Laws 1896, c. 272) § 22, though brought before the conclusion of the administration of the debtor's estate, was not premature.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 590.*]

7. INSURANCE (§ 590*)—LIFE INSURANCE—INSOLVENCY.

Where a creditors' suit to recover insurance purchased on a debtor's life with premiums in excess of $500 per annum, as authorized by Domestic Relations Law (Laws 1896, c. 272) § 22, is brought before conclusion of the administration of the debtor's estate, it must be proved and found that insured died insolvent.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 590.*]

8. INSURANCE (§ 590*)—INSOLVENT ESTATES—DISTRIBUTION—INSURANCE.

Where a creditor's suit was instituted to recover insurance purchased with premiums in excess of $500 per annum, prior to the conclusion of the administration of the insured's estate, the fund resulting from the payment of the excess premiums should be impounded to await the conclusion of the administration when it should be distributed to the payment of creditors' claims and the balance if any, then paid to the beneficiary.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 590.*]

Appeal from Judgment on Report of Referee.

Action by the Guardian Trust Company against Rosa W. Straus, individually and as executrix of the will of Louis Straus, deceased, and others. From a judgment for plaintiff entered on a referee's report, defendants appeal. Affirmed on the opinion of the referee.

See 61 Misc. Rep. 441, 115 N. Y. Supp. 247.

The following is the opinion of Wilbur Larremore, Referee:

This suit was brought by the plaintiff as a creditor of Louis Straus, deceased, in behalf of itself and all other creditors, for the purpose, among others, of having it adjudged that that portion of the aggregate amount of life insurance policies upon the life of said Louis Straus purchased by the excess of premiums above $500 annually, out of his property, be brought into court and administered according to law for the benefit of said creditors. The various life insurance companies are parties defendant. The action is brought under section 22 of the Domestic Relations Law (chapter 272, Laws 1896), which is as follows:

"Insurance of Husband's Life.—A married woman may in her own name, or in the name of a third person, with his consent, as her trustee, cause the life of her husband to be insured for a definite period, or for the term of his natural life. Where a married woman survives such period or term, she is entitled to receive the insurance money, payable by the terms of the policy, as her separate property, and free from any claim of a creditor or representative of her husband, except that where the premium actually paid annually out of the husband's property exceeds five hundred dollars, that portion of the insurance money which is purchased by excess of premium above five hundred dollars, is primarily liable for the husband's debts. The policy may provide that the insurance, if the married woman dies before it becomes due without disposing of it, shall be paid to her husband, or to his, her or their children, or to or for the use of one or more of those persons; and it may designate one or more trustees for a child or children to receive and manage such money until such child or children shall attain full age. The married woman may dispose of such policy by will or written acknowledged assignment to take effect on her death, if she dies thereafter leaving no descendant surviving. After the will or assignment takes effect, the legatee or assignee

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

takes such policy absolutely. A policy of insurance on the life of any person for the benefit of a married woman, is also assignable and may be surrendered to the company issuing, the same, by her, or her legal representatives, with the written consent of the assured."

The history of the legislation leading up to this statute, as well as a full exposition of the legislative intention in enacting it, are given in Kittel v. Domeyer, 70 App. Div. 134, 140, 75 N. Y. Supp. 150, 154. The court, per McLaughlin, J., said: "The statute provides that that portion of the insurance money which was purchased by excess of premiums above $500 is 'primarily,' liable for the husband's debts. The word 'primarily' is used as a synonym for the word 'first'—that is, that the excess of the insurance shall be first liable for the husband's debts, and, secondly, that after the husband's debts have been satisfied the remainder of the excess shall belong to the wife. If we are right in thus construing the statute, it necessarily follows that this excess of insurance is a fund for not one but all the creditors of the deceased. It is an equitable asset of the estate of the husband who died insolvent, without sufficient property to pay all his just debts. Therefore the executor or administrator of the husband's estate, in the administration of the same, is obligated to reduce this equitable asset to possession, under the powers conferred by chapter 314 of the Laws of 1858, and distribute the same among all the creditors of the deceased. Of course, the wife cannot be deprived of any part of this insurance which is not necessary for the payment of the debts of the deceased. That this was the legislative intent is indicated by the phrase that this excess of insurance shall be 'primarily' liable for the payment of the husband's debts; in other words, if the husband does not leave sufficient property to pay his debts, then the claims of all the creditors are to become a lien upon the insurance purchased by annual premiums in excess of $500, and until such claims have been paid the wife has no interest in such proceeds; that is, the proceeds of the excess of insurance is property which has been produced by the misapplication of assets of the insolvent husband, and which, under the statute, forms a part of his estate to be distributed, after his other property has been exhausted, among all his creditors."

In passing upon this same case the Court of Appeals, while reversing the actual result reached by the Appellate Division, remarked (175 N. Y. 205, 211, 67 N. E. 431, 434): "With the reasoning of the Appellate Division upon the legislative  intent, in the enactment of the statute in question, I think we should agree. The opinion of the court is so clear, and its discussion is so full that I can add nothing to it. * * * Without further discussing these questions. I reach the conclusion that the reading and interpretation of the statute by the Appellate Division were right and should be approved."

The learned counsel for the defendant Rosa W. Straus contends now, after the case is finally submitted, as he did upon a preliminary argument, that the present case is not within the section of the domestic relations law above quoted, on the ground that the only purpose in passing the statute was to clear up doubts which existed as to the extent of the right of a wife to insure her husband's life. The learned counsel treats this statute purely as an enabling act, and contends that it must be construed strictly in accordance with its express terms. As there is no language that "directly or indirectly refers to any insurance other than that taken out or caused to be taken out by the wife on the life of her husband," the statute, it is argued, cannot cover insurance "taken out by the husband on his own life and made payable to the wife." In other words, it is claimed that as the text of the statute authorizes a wife to cause the life of her husband to be insured it cannot be amplified by implication to cover cases where the husband is the negotiating and procuring party. I have already, at an earlier stage of this case, expressed my dissent from this view. The terms of the statute that a married woman may "cause the life of her husband to be insured" would not exclude a case like the present, where a husband, with his wife's knowledge and consent, obtains insurance on his life for her benefit. The important feature in this statute, as interpreted by the Appellate Division and the Court of Appeals, is not who negotiates and actually procures the insurance poli-

cies to be issued, but who pays the premiums. I cannot discover that the precise point now raised has been considered and passed on in other litigations. But it does appear that in other adjudicated cases in which this statute has been held to apply the policies were actually issued upon the applica· tion of the husband. In Kittel v. Domeyer, already cited, which is the lead-- ing case upon the interpretation of the act, the applications were by the husband, and were substantially similar to the applications for policies involved in the case at bar.

In Kittel v. Domeyer the insurance purchased by the excess of $500 annual premium is characterized as a "fund for not one, but all the creditors· of the deceased. It is an equitable asset of the estate of the husband who died insolvent, without sufficient property to pay all his just debts." As the fund is subject to a lien in favor of all the creditors, I cannot attach a controlling force to the argument of learned counsel for the defendant that the premiums in excess of $500 were not paid by the deceased "after the plaintiff's debt was incurred." As matter of fact, the plaintiff is suing representatively for all the creditors. The debt of any one creditor is merely an element of the determination. If there are creditors and the decedent did not leave sufficient assets to pay all his just debts, the amount of the excess insurance becomes an equitable asset applicable to the satisfaction of all the debts. The learned counsel for Mrs. Straus further contends that the statute does not apply because she furnished certain moneys for the purpose of paying the premiums, and, deducting the same, "there was at no time during the life of the policies in question a payment by Mr. Straus of premiums in excess of $500." The evidence on this point consists entirely of uncorroborated statements of Mrs. Straus. The learned counsel for the defendant does not analyze or discuss this testimony in detail, nor shall I. In a general way, it may be said that Mrs. Straus avers that in the year 1902, in order to induce the decedent to take out life insurance, she agreed to furnish him out of her own funds at least $500 per year in order to pay the premiums. She attempts to show performance of this agreement on her part by testifying to contributions out of her own moneys to the expenses of the household, to payments for board by her mother and sister who were living with the defendant and her husband, and by charges against the decedent for rent of the premises occupied by them as a family residence.

As to the second of these alleged sources of revenue, I cannot see why, if Mr. Straus was the head of the family, and furnished, partly from his own funds and partly from gifts or borrowings from his wife, the money to meet the household expenses, the sums collected for board did not presumably belong to him. Regarding the claim for rent, Mrs. Straus testifies that she had given to her husband certain bonds belonging to her, the proceeds of which were used in his business, and that thereafter in repayment of such amount he purchased in her interest, and so that she became the equitable owner of, the house in question. Concerning the claims both of direct contributions to the family expenses and for rent, it may be said that it is not unusual for a wife, who has means, to add to the family income so as to authorize a more generous scale of living, or if she is the legal owner—here nothing is asserted but equitable ownership—of a house, to permit her husband to occupy it with her as a family residence, rent free.

As already observed, the alleged original agreement to furnish the decedent with funds, as well as the various alleged methods by which it was carried out, have nothing to support them but Mrs. Straus' uncorroborated evidence. Much of it is inherently improbable. She did not keep accounts, and does not produce vouchers other than her own checks. She does not attempt to show her alleged contributions exactly, giving merely vague and unsatisfactory estimates. The case, on this branch of it, is typical of a large number, several of which are cited in the brief of the learned counsel for the plaintiff. Indeed, as counsel for plaintiff shows by an extract in his brief, the case at bar, on the facts as well as the law, resembles Kittel v. Domeyer, supra. The authorities are practically unanimous that under such circumstances as are here disclosed the testimony of the single interested witness is to be searchingly scrutinized, and the presumption is against its credibility. The burden is upon the wife, and she is held to convincing affirmative proof.

I am of opinion that the defendant has not met such burden, and that a finding that she had furnished moneys to her husband in the various methods she claims to have done would not be authorized.

The evidence certainly would not permit a finding as against creditors, of the making of the original contract to furnish at least $500 per year, and, in effect, decreeing a specific performance thereof. In the purely legal aspect, all of the facts attempted to be shown, even if they were true, would be immaterial. According to her own statements, Mrs. Straus did not pay the premiums herself, but directly or indirectly furnished the insured with money. If the premiums were traceable through the husband's hands and identifiable in the hands of the insurer as coming from the beneficiary, a different case might be presented. Nothing further is attempted to be proved than contributions to the husband's general assets by the wife and payment of premiums by the husband. Defendant's legal status, therefore, according to her own showing, would seem to be merely that of a creditor of her husband, and to establish this would not be sufficient to take the policies out of the operation of the statute. Section 22 of the domestic relations law is a broad remedial act for the benefit of both the wife and the creditors; it establishes an "equitable asset" subject to the lien of creditors, where the premiums are actually paid out of the husband's property. And the premiums are no less paid out of the husband's property because the wife renders it easier for him to do so by giving or lending him money that is used to defray household expenses.

The learned counsel for the defendant further claims that such of the policies in question as were issued by corporations organized under the laws of other states are not controlled by the New York statute. He cites upon this point section 92 of Richards on Insurance Law (3d Ed.), which lays down the proposition that "ordinarily the laws and the usages of the place in which the contracts are made are to be applied in its interpretation and construction." The concluding sentence of section 92 of Mr. Richards' treatise is: "As a general thing a contract is considered made where the last act necessary to complete it is done." The testimony is not at all full upon the details of the issue of these policies, but certain facts appear. All of the policies had indorsed upon them the names and addresses of agents in New York. There is testimony as to some of the policies that they were actually negotiated. and premiums paid through the New York offices. The tendency of the courts in all American jurisdictions is to hold that foreign insurance companies, and the business conducted by them, are controlled and regulated by domestic statutes of general application. Strauss v. Union Central Life Insurance Company, 170 N. Y. 349, 63 N. E. 347; Presbyterian M. Fund v. Thomas, 126 Wis. 281, 105 N. W. 801, 110 Am. St. Rep. 919.

Before the present action was commenced Mrs. Straus had brought individual actions against the insurance companies in the courts of New York, and the present action supersedes such individual actions. In my judgment the burden is upon the defendant to show that the New York statute does not apply to all the policies. If the circumstance that some or all of the policies were actually foreign contracts be material, it may be said that such proof as there is in the case tends quite as much, if not more, to show that they were New York, as that they were foreign, contracts.

Strictly speaking, an action of this character should be brought after the conclusion of administration and the establishment of insolvency. It was held, however, in Kittel v. Domeyer that the action, though brought before the conclusion of administration, was not premature, but might be allowed to proceed. Accordingly, I have held that this action was not prematurely brought. In an action commenced before the conclusion of administration some proof of the existence of creditors must be necessary in order to authorize relief. Just how much proof of this character is required may be problematical. In the Domeyer Case it was asserted in the opinion that the decedent was insolvent. I have admitted extensive proof on the question of insolvency. Evidence of the decedent's books of account and of his declarations was received, ruling being reserved as to the competency of the same as against the defendant Rosa W. Straus individually. This testimony was admitted as bearing on the question of insolvency, and I have concluded to receive it as against the defendant individually as well as in her representative

capacity. Upon all the testimony in the case I shall find that the insured died insolvent. Outside of the evidence of account books and the decedent's declarations, however, there is ample proof that Louis Straus died owing many debts, and evidence of assets sufficient to pay the same has not been adduced. If an action may be brought before administration, as has been countenanced in the Domeyer Case, a finding of the latter limited scope must be sufficient to support it. I shall accordingly find on the evidence outside of the books and the decedent's declarations, that he died largely indebted, and that it does not appear that he possessed sufficient assets to pay his debts; and I shall find on all the evidence that he died insolvent.

The fund resulting from the payment of premiums over $500 must remain impounded to await administration. As has been shown, this fund is one for the benefit of all the creditors. There has been no advertisement for creditors' claims; there may be creditors other than those now before the court or otherwise known who are entitled to participate in the distribution.

The report, therefore, will recommend the entry of a judgment directing that the fund now on deposit with the Empire Trust Company remain there, or be placed with such other depository as the court shall direct, to await the conclusion of administration.

Counsel for plaintiff may prepare a report in accordance with the above views, to be settled on notice, and, as heretofore understood, counsel for defendant may submit requests for findings of fact and conclusions of law.

Argued before INGRAHAM, P. J., and McLAUGHLIN, SCOTT, LAUGHLIN, and DOWLING, JJ.

W. B. Ellison, for appellants.
W. S. McGuire, for respondent.

PER CURIAM. Judgment affirmed, with costs on opinion of referee. Order filed.

---

### In re GLUCK.

(Supreme Court, Appellate Division, First Department. June 17, 1910.)

ATTORNEY AND CLIENT (§ 38*)—DISBARMENT OF ATTORNEY—SUSPENSION—GROUNDS.

　Where an attorney deceived his client as to the services he had been employed to perform, failed utterly to protect his client, obtained from the latter the execution of instruments containing clauses that the client supposed had been erased, and was also guilty of misconduct in practicing law under a firm name which included the names of attorneys with whom respondent had never been associated, suspension from practice for one year would be ordered.

　[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 51, 61; Dec. Dig. § 38.*]

Proceedings for the disbarment of Maurice B. Gluck, an attorney. Report of referee confirmed, and respondent suspended from practice for one year.

See, also, 133 App. Div. 900, 118 N. Y. Supp. 1093.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

Joseph H. Adams, for petitioner.
Theodore H. Lord, for respondent.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes